IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADMIRAL INSURANCE GROUP doing business as ADMIRAL INSURANCE COMPANY, | Civil Action No. 16-391 |
| | Judge David Stewart Cercone |
| Plaintiff, | Chief Magistrate Judge Maureen P. Kelly |
| v. | |
| STANLEY A. WINIKOFF, ESQUIRE and DELL, MOSER, LANE & LOUGHNEY, LLC, | Re: ECF No. 7 |
| Defendants. | |

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

Plaintiff Admiral Insurance Group *d/b/a* Admiral Insurance Company ("Plaintiff"), filed a "Complaint in Professional Legal Malpractice" ("the Complaint") against Defendants Stanley A. Winikoff, Esquire ("Winikoff") and Dell, Moser, Lane & Loughney ("DML&L") (collectively, "Defendants") on April 4, 2016, alleging that Winikoff breached his duty to provide competent legal services as well as his contractual duties during the course of representing Plaintiff's insured, which resulted in a $1.7 million loss to Plaintiff. ECF No. 1.

Presently before the Court is a Motion to Dismiss submitted on behalf of Defendants. ECF No. 7. For the following reasons, it is respectfully recommended that the Motion be granted in part and denied in part.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Plaintiff issued a Professional Liability Policy ("the Policy") to Allegheny Correctional Health Services, Inc. ("ACHS"), which provided infirmary services for the Allegheny County Prison System. ECF No. 1 ¶ 8. Under the terms of the Policy, which was in effect from December 31, 2011 through December 31, 2012, Plaintiff was obligated to assign counsel to defend ACHS, as well as ACHS's employees, when ACHS was sued for an alleged civil rights violation. Id. ¶¶ 9-11. In an email dated October 31, 2012, Plaintiff assigned Defendants the legal obligation to defend ACHS and the individually-named medical defendants ("the underlying Defendants") in two civil rights cases that implicated Plaintiff's duty to defend and indemnify under the Policy: *Earl Black, Administrator of the Estate of Derek E. Black v. ACHS, et al*, 2:13-cv-00179 ("Black I"), which was assigned to Magistrate Judge Cynthia Reed Eddy, and *Earl Black, Administrator of the Estate of Derek E. Black v. Dr. Eugene Youngue and David Humphries, CRNP*, 2:14-cv-00505 ("Black II"), which was assigned to District Judge David Stewart Cercone.[1] Id. ¶¶ 11, 14. Plaintiff alleges that, during the course of representing the defendants in Black I and Black II, Winikoff breached his duty to exercise the degree of ordinary knowledge, skill, and competence acceptable to the legal profession as well as his contractual duties in the following manner:

> 1. By consistently failing to comply with Court Orders and the Federal Rules of Civil Procedure, when Defendant knew or should have known that such failure could jeopardize effective legal representation of the Admiral insured, ACHS and the individually named medical defendants;

---

[1] In Black I and Black II, the estate of Derek E. Black brought Eighth Amendment claims against ACHS and the individual medical defendants alleging that Derek E. Black died as a result the defendants' deliberate indifference to his medical needs. Id. ¶¶ 11, 15.

2. By failing to timely file a responsive pleading to the Estate's Second Amended Complaint;

3. By failing to timely submit the expert reports on behalf of the Admiral insured, ACHS and the individually-named medical defendants, when Defendant knew or should have known that such failure would jeopardize an effective defense of the Admiral insureds, especially since the underlying litigation concerned complex medical issues involving the death of a prisoner based on an alleged deliberate indifference to that prisoner's medical care;

4. By failing to request and obtain an extension of time with Judge Eddy within which to file the expert reports which resulted in Judge Eddy barring the use of the expert reports by ACHS and the individually-named medical defendants at either the summary judgment stage or at trial;

5. By failing to file Objections with Judge David Cercone within the requisite 14-days of Judge Eddy's May 30, 2014 Order precluding the introduction of the expert reports at a time when Judge Eddy had not yet obtained consent to exercise exclusive jurisdiction in Black I;

6. By erroneously filing an extremely untimely Motion for Reconsideration with Judge Eddy regarding her Honor's preclusion of the expert reports;

7. By filing frivolous motions within the Western District of Pennsylvania, where Defendant knew or should have known that doing so would further jeopardize effective representation of the Admiral insureds; and

8. By failing to keep Admiral fully and accurately informed as to the progress of the case, thereby precluding Admiral from being able to accurately evaluate the underlying litigation and properly consider the risks attendant to the matter.

Id. ¶¶ 51, 56. See id. ¶¶ 22-46. According to Plaintiff, this pattern of errors and omissions, particularly that which resulted in the preclusion of using the expert reports, converted what Winikoff described as a "clearly winnable" case into a lost cause. Id. ¶¶ 19, 21. As a result, Plaintiff alleges that it was forced to collectively settle Black I and Black II, which Winikoff had advised should settle for the sum of $300,000.00, for $2 million. Id. ¶¶ 34, 47.

Plaintiff filed the instant Complaint on April 4, 2016, bringing claims against Winikoff and DML&L for legal malpractice (Count I) and breach of contract (Count II). Plaintiff has also brought a separate claim against DML&L alleging that DML&L is liable to Plaintiff under the theory of *respondeat superior*/vicarious liability (Count III). ECF No. 1.

On May 18, 2016, Defendants filed a Motion to Dismiss and accompanying brief, ECF Nos. 7 and 8, to which Plaintiff filed a Response on June 15, 2016. ECF No. 25. Defendants filed a Reply to Plaintiff's Response on June 29, 2016, ECF No. 26, and on July 19, 2016, having been granted leave of Court, Plaintiff filed a Sur-Reply. ECF No. 29. As such, Defendants' Motion to Dismiss is ripe for review.

**B.     STANDARD OF REVIEW**

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to

relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

### C. DISCUSSION

#### 1. Legal Malpractice

As set forth by the United States Court of Appeals for the Third Circuit:

> To succeed on a legal malpractice action under Pennsylvania law, a plaintiff must establish the following elements: "1) employment of the attorney or other basis for duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff." *Kituskie v. Corbman,* 552 Pa. 275, 714 A.2d 1027, 1029 (1998) (quoting *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58, 65 (1989)).

> "An essential element to this cause of action is proof of actual loss rather than a breach of professional duty causing only nominal damages, speculative harm or the threat of future harm." *Kituskie,* 714 A.2d at 1030. Therefore, aside from showing that the defendants' representation was deficient, "a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case." *Id.* In other words, "a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have recovered a judgment in the underlying action," *id.,* before reaching the attorney's alleged failure to exercise ordinary skill and knowledge.

5

Nat'l Grange Mut. Ins. Co. v. Goldstein, Heslop, Steel, Clapper, Oswalt & Stoehr, 142 F. App'x 117, 120 (3d Cir. 2005).[2] Further, the Supreme Court of Pennsylvania has held that "[t]he test of whether damages are remote of speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages. Thus, damages are speculative only if the uncertainty concerns the *fact* of damages rather than the amount." Rizzo v. Haines, 555 A.2d 58, 68 (Pa. 1989), *quoting* Pashak v. Barish, 450 A.2d 67, 69 (Pa. Super. Ct. 1982) (emphasis in original).

In the instant case, Defendants argue that Plaintiff has failed to state a claim for legal malpractice because it has failed to plead facts to support the third element or that, absent speculation, Winikoff's negligence was the proximate cause of Plaintiff's damages. Specifically, Defendants argue that for Plaintiff to recover, the fact finder would be required to speculate that:

> 1. the underlying case could have settled and would have settled for the value allegedly suggested by Mr. Winikoff (i.e., $300,000.00), if a defense medical expert report had been available;
>
> 2. the case was not, in fact, really worth what Admiral paid to settle it ($2,000,000.00);
>
> 3. the case could not have been settled for between $800,000.00 and $1,500,000.00 which was the potential verdict range estimated by David J. Rosenberg, Esquire, Admiral's replacement trial counsel;
>
> 4. if the case had gone to trial, it could not have been brought in for anything less than exactly the $2 million Admiral paid to settle it.

ECF No. 8 at 3. Plaintiff does not squarely address Defendants' argument in this regard but rather spends the majority of its brief in opposition to the Motion discussing the second element of a legal malpractice claim, *i.e.*, Winikoff's shortcomings, and then states that "[a]s a direct and

---

[2] The parties do not dispute that Pennsylvania law applies.

proximate result of Defendant [sic] clearly alleged malpractice, Plaintiff was made to pay a substantially higher settlement that the original settlement value recommended by Defendant Winikoff . . . ." ECF No. 25 at 9-10.

This notwithstanding, review of the Complaint shows that Plaintiff has alleged that Winikoff advised the underlying Defendants not only that the case was "clearly winnable," but that opposing counsel in Black I & II admitted that he did not have a good case. ECF No. 1 ¶¶ 19-21. In addition, the underlying Defendants retained an expert who issued a report in support of the underlying Defendants' defense that they were not deliberately indifferent to Derek Black's medical needs and thus are not liable to his estate. Id. ¶¶ 15, 27. Due to Winikoff's alleged failures, however, the underlying Defendants were precluded from utilizing the expert reports which, according to the Complaint, rendered the cases unwinnable. Id. ¶¶ 27, 28, 45. Winikoff nevertheless represented thereafter that the cases should collectively settle for $300,000.00. Id. ¶¶ 28, 34. In addition, Plaintiff has alleged that new counsel, who Plaintiff subsequently assigned to the cases, predicted that without the expert reports a jury would return a verdict of between $800,000.00 and $2 million. To avoid further litigation in cases it could no longer win, Plaintiff ultimately settled the cases for $2 million. Id. ¶¶ 46-47.

In this Court's view, these facts are sufficient to permit a fact finder to infer that, as a result of Defendants' conduct, Plaintiff suffered damages. Although to be sure, the precise dollar amount that the case would have settled for had the underlying Defendants been permitted to rely on the expert reports is impossible to ascertain. It nevertheless appears that Plaintiff has pled sufficient facts from which it can be inferred that the expert report would have impacted the

value of Black I and Black II and that the cases would have settled for less than $2 million. Rizzo v. Haines, 555 A.2d at 68.

Indeed, in White v. Kreithen, 644 A.2d 1262 (Pa. Super. Ct. 1994), the Pennsylvania Superior Court permitted the plaintiff's legal malpractice claim to go forward under similar circumstances. The plaintiff discharged the attorneys representing her in a medical malpractice suit because they had been negligent in investigating the case and conducting discovery and were not prepared for the impending trial. In addition, the plaintiff's efforts to retain new counsel were thwarted by the defendants as they refused to transfer the file to the plaintiff and made unreasonable demands regarding referral fees from proposed new counsel. The Calendar Judge subsequently recommended a settlement of $150,000.00, even though the amount did not cover the plaintiff's medical expenses and counsel had previously placed a value on the plaintiff's case of between $250,000.00 and $500,000.00. The Calendar Judge also stipulated that if the plaintiff did not accept his recommendation the trial would commence immediately. Plaintiff therefore accepted the recommendation and settled the case for $150,000.00, and subsequently initiated a legal malpractice suit against her former attorneys.

Relying on Muhammad v. Strassburger, 587 A.2d 1346 (1991), the trial court granted the defendants' preliminary objections because the plaintiff had opted to settle the underlying medical malpractice case. On appeal, the Pennsylvania Superior Court reversed finding that Muhammad did not apply as it was concerned with protecting attorneys who negotiated settlements on behalf of their clients from subsequent malpractice suits when the client later became dissatisfied. Because the plaintiff in White had alleged in the complaint that she was forced to settle her claim after counsel was discharged as a result of counsels' negligence she had

established the required elements of legal malpractice and should be permitted to go forward with her case. Id. at 1265.

Here, like the plaintiff in White, Plaintiff has alleged that it was forced to settle Black I and Black II to its detriment as a result of prior counsel's negligence in handling the cases. Under these circumstances, Plaintiff, like that in White, should be allowed to proceed with the claim and Defendants' Motion in this regard should be denied.[3]

### 2. Breach of Contract

Under Pennsylvania law, in order to prevail on a breach of contract claim, "a plaintiff must demonstrate (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." Haywood v. Univ. of Pittsburgh, 976 F. Supp. 2d 606, 625 (W.D. Pa. 2013), *citing* Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). Defendants argue that Plaintiff has failed to allege facts to support any of these three elements and that merely because a defendant was allegedly paid fees for services does not give rise to a cause of action for breach of contract. Rather, Defendants contend that Plaintiff's failure to point to a specific contract provision or a specific client instruction that they failed to abide by shows that the claim sounds only in negligence and is not a true breach of contract claim.

Under Pennsylvania law, legal malpractice claims may be brought under a contract theory as well as a tort theory. Rinker v. Amori, No. 15-1293, 2016 WL 1110217, at *5 (M.D. Pa. Mar. 22, 2016), *citing* Frantz v. Fasullo, No. 13-2345, 2014 WL 6066020, at *3 (M.D. Pa. Nov. 13,

---

[3] Indeed, in Sokolsky v. Eidelman, 93 A.3d 858 (Pa. Super. Ct. 2014), the case principally relied upon by Defendants to support a contrary position, the court did not discuss the damage element of the plaintiff's legal malpractice claim at all and, unlike the instant case, it was decided at the summary judgment stage of the proceedings and not at the pleading stage.

9

2014). Although it has been generally held that "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those of the profession at large," a breach of contract claim must nevertheless be based on the terms of that contract. Bailey v. Tucker, 621 A.2d 108, 115 (Pa. 1993). It therefore appears that in order to state a legal malpractice breach of contract claim, a plaintiff must point to a specific provision of their contract or a specific client instruction that the attorney failed to follow. Rinker v. Amori, 2016 WL 1110217, at *6, *quoting* Frantz v. Fasullo, 2014 WL 6066020, at 4. Absent such assertions, "a client's breach of contract claim against a lawyer 'is not a true contract cause of action but sounds in negligence by alleging [that the attorney] failed to exercise the appropriate standard of care.'" Id. *quoting* Storm v. Golden, 538 A.2d 61, 65 (Pa. Super. Ct. 1988). See Edwards v. Thorpe, 876 F. Supp. 693, 694 (E.D. Pa. 1995) ("when a plaintiff's cause of action is based on the attorney's failure to exercise due care, it will sound in contract only if the attorney fails to follow the client's specific instructions or, by her negligence, breaches a specific provision of the contract").

Indeed, as the United States Court of Appeals for the Third Circuit has recently observed:

> The Pennsylvania Supreme Court has recently reiterated how the gist of the action doctrine determines whether a cause of action, although arising from a contractual relationship, sounds in contract or in tort. The Court, in *Bruno v. Erie Insurance Company*, 106 A.3d 48 (Pa. 2014), explained that, if "the facts of a particular claim establish that the duty breached is one created by the parties by the terms of the contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract," then the claim should be treated as one for breach of contract. *Id.* at 68 (emphasis added). "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id.* In sum, a claim sounds in negligence unless it is alleged that the party

breached one of the "specific executory promises which comprise the contract." *Id.* at 70.

New York Cent. Mut. Ins. Co. v. Edelstein, 637 F. App'x 70, 72-73 (3d Cir. 2016).[4]

Plaintiff has alleged in the Complaint that in the Commonwealth of Pennsylvania, the attorney selected by an insurer to represent its insured serves as counsel for both the insured and the insurer and thus has a duty to both the insured and the insurer; that Plaintiff assigned Defendants the legal obligation of defendant its insured in Black I and Black II; that in consideration for providing legal services to its insured, Plaintiff paid for all legal services billed thereby creating an attorney-client relationship; that Defendants had an implied contract agreement with Plaintiff to provide competence and effective legal representation; that by assuming the representation of Plaintiff's insured, Defendants agreed to provide Plaintiff with professional services consistent with those expected of the profession at large; that Winikoff engaged in a pattern of errors and omissions that breached the implied contract; and that, as a direct and proximate cause of Winikoff's errors and omissions, Plaintiff suffered financial harm. ECF No. 1 ¶¶ 11-13, 16, 18-47, 55-57.

Notably absent from these allegations are any specific instructions or provisions of any agreement between the parties that Winikoff failed to follow. Rather, Plaintiff's claim is based on Winikoff's failure to abide by the relevant professional standard of care and thus sounds in negligence -- not contract.

---

[4] Although, as Plaintiff has pointed out, New York Cent. Mut. Ins. Co. v. Edelstein, is an unpublished opinion with no precedential value, it is nevertheless instructive as it is factually similar to the case at bar and its decision is premised on a Pennsylvania Supreme Court case which is a published opinion and controls Plaintiff's breach of contract claim. Moreover, although a legal malpractice breach of contract claim was not at issue in Bruno, the Court of Appeals for the Third Circuit has clearly found that it nevertheless applies to such claims.

11

Relying on Gorski v. Smith, 812 A.2d 683 (Pa. Super Ct. 2002), which in turn relies on Bailey v. Tucker, 621 A.2d at 115, Plaintiff nevertheless argues that it need not point to a specific instruction that Winikoff failed to follow, but may state a claim for legal malpractice breach of contract by merely alleging that Winikoff failed to provide legal services in a manner consistent with the profession at large. The Third Circuit Court of Appeals, however, and seemingly the Pennsylvania Supreme Court, has expressly rejected the same argument in New York Cent. Mut. Ins. Co. v. Edelstein, finding that:

> Appellants argue that their Second Amended Complaint alleges a "breach of the implied contractual term to perform [Appellees'] services in a manner consistent with the profession at large." Appellants' Br. at 21. Appellants primarily rely on *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108 (1993), in which the Pennsylvania Supreme Court, during a discussion of breach of contract claims, observed that "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." *Id.* at 115; *see* Appellants' Br. at 23–27. However, given the Pennsylvania Supreme Court's delineation of contractual and tort claims in *Bruno*— according to which a claim sounding in contract is founded on the breach of "specific executory promises"—we decline to read the Court's dicta in *Bailey* as establishing a distinct contractual promise upon which a breach of contract claim may be premised.

Id., 637 F. App'x at 74. See Bruno v. Erie Ins. Co., 106 A.3d at 68, 70. Under these circumstances, the Court finds Plaintiff's argument unpersuasive. Accordingly, Plaintiff's legal malpractice claim brought at Count II of the Complaint is properly dismissed.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss, ECF No. 7, be granted in part and denied in part.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

          Respectfully submitted,

          /s/ Maureen P. Kelly
          MAUREEN P. KELLY
          CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: September 20, 2016

cc:    The Honorable David Stewart Cercone
      United States District Judge

      All counsel of record by Notice of Electronic Filing