IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADMIRAL INSURANCE GROUP doing business as ADMIRAL INSURANCE COMPANY, | Civil Action No. 16-391 |
| | Judge David Stewart Cercone/ |
| Plaintiff, | Chief Magistrate Judge Maureen P. Kelly |
| v. | |
| STANLEY A. WINIKOFF, ESQUIRE and DELL, MOSER, LANE & LOUGHNEY, LLC, | Re: ECF No. 55 |
| Defendants. | |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

On April 4, 2016, Plaintiff Admiral Insurance Group *d/b/a* Admiral Insurance Company ("Plaintiff"), filed a "Complaint in Professional Legal Malpractice" ("the Complaint") against Defendants Stanley A. Winikoff, Esquire ("Winikoff") and Dell, Moser, Lane & Loughney ("DML&L") (collectively, "Defendants").  Plaintiff alleges that Winikoff breached his duty to provide competent legal services as well as his contractual duties during the course of representing Plaintiff's insured, which resulted in a $1.7 million loss to Plaintiff.  ECF No. 1.

Presently before the Court is a Motion to Dismiss based on lack of standing submitted on behalf of Defendants.  ECF No. 55.  For the following reasons, it is respectfully recommended that the Motion be denied.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Plaintiff issued a Professional Liability Policy ("the Policy") to Allegheny Correctional Health Services, Inc. ("ACHS"), which provided infirmary services for the Allegheny County Prison System. ECF No. 1 ¶ 8. Under the terms of the Policy, which was in effect from December 31, 2011 through December 31, 2012, Plaintiff was obligated to assign counsel to defend ACHS, as well as ACHS's employees, when ACHS was sued for an alleged civil rights violation. Id. ¶¶ 9-11. In an email dated October 31, 2012, Plaintiff assigned Defendants the legal obligation to defend ACHS and the individually-named medical defendants ("the underlying Defendants") in two civil rights cases that implicated Plaintiff's duty to defend and indemnify under the Policy.[1] Id. ¶¶ 11, 14. Plaintiff contends that this assignment, pursuant to which "Admiral paid all legal services billed," created "an attorney-client relationship between Admiral and Defendants Winikoff and DM." Id. ¶ 13.

During the course of representing the defendants in Black I and Black II, Winikoff, according to Plaintiff, repeatedly failed to comply with court orders and the Federal Rules of Civil Procedure, file timely responses, submit expert reports, or otherwise exercise the degree of ordinary knowledge, skill, and competence acceptable to the legal profession. See id. ¶¶ 22-46, 51, 56. Plaintiff contends that this pattern of errors and omissions converted a "clearly winnable" case into a lost cause. Id. ¶¶ 19, 21. As a result, Plaintiff alleges that it was forced to collectively

---

[1] The underlying cases were *Earl Black, Adm'r of the Estate of Derek E. Black v. ACHS, et al*, No. 2:13-cv-00179 ("Black I"), and *Earl Black, Adm'r of the Estate of Derek E. Black v. Dr. Eugene Youngue and David Humphries, CRNP*, No. 2:14-cv-00505 ("Black II"). In each case, the estate of Derek E. Black brought Eighth Amendment claims against ACHS and the individual medical defendants alleging that Derek E. Black died as a result the defendants' deliberate indifference to his medical needs. Id. ¶¶ 11, 15.

settle Black I and Black II, which Winikoff had advised should settle for the sum of $300,000.00, for $2 million.  Id. ¶¶ 34, 47.

Plaintiff filed the instant Complaint on April 4, 2016, asserting claims against Winikoff and DML&L for legal malpractice (Count I) and breach of contract (Count II).  Plaintiff has also brought a separate claim against DML&L alleging that DML&L is liable to Plaintiff under the theory of respondeat superior/vicarious liability (Count III).  ECF No. 1.

On May 18, 2016, Defendants filed a Motion to Dismiss and accompanying brief, ECF Nos. 7 and 8, seeking dismissal of Counts I and II.  On September 20, 2016, this Court issued a Report and Recommendation ("R&R") that Defendants' Motion to Dismiss be denied as to Count I and granted as to Count II.  ECF No. 30.  On October 14, 2016, District Judge David S. Cercone adopted the R&R as the opinion of the Court.  ECF No. 33.

Following a change in counsel, Defendants filed the instant Motion to Dismiss, their second, on February 6, 2017.  ECF No. 55.  Plaintiff filed a Response on March 6, 2017.  ECF No. 58.  Defendants filed a Reply to Plaintiff's Response on March 27, 2017, ECF No. 61, and on April 13, 2017, having been granted leave of Court, Plaintiff filed a Sur-Reply.  ECF No. 64. Defendants' Motion to Dismiss is now ripe for review.

    **B.**    **STANDARD OF REVIEW**

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set

forth in the complaint. See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

**C.  DISCUSSION**

In order to establish a claim of legal malpractice in Pennsylvania, a plaintiff must establish the following elements: "1) employment of the attorney or other basis for a duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff." Kituskie v. Corbman, 714 A.2d 1027, 1029 (Pa. 1998) (quoting Rizzo v. Haines, 55 A.2d 58, 65 (Pa. 1989)). "The threshold element of any legal malpractice claim, whether brought in contract or tort, is the existence of an attorney-client relationship." Heldring v. Lundy Beldecos & Milby, P.C., 151 A.3d 634, 641 (Pa. Super. Ct.

4

2016) (citing McHugh v. Litvin, Blumberg, Matusow & Young, 574 A.2d 1040, 1042 (Pa. 1990)). In order to prevail, Plaintiff must establish that an attorney-client relationship arose between Plaintiff and the Defendants during the course of Defendants' representation of Plaintiff's insured in Black I and Black II.

Neither the Pennsylvania Supreme Court nor the United States Court of Appeals for the Third Circuit has explicitly addressed whether an attorney-client relationship forms between an insurance company and an attorney when the insurer assigns counsel to represent an insured pursuant to a duty to defend. In the absence of any such guidance, a federal court sitting in diversity must consider: "(1) what [the state's highest] court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." In re Energy Holdings Corp., 842 F.3d 247, 253-54 (3d Cir. 2016) (quoting Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc., 653 F.3d 225, 231 (3d Cir. 2011)).

As noted by Plaintiff, the only two Pennsylvania courts to have explicitly considered the issue have each ruled in favor of permitting an insurer to pursue malpractice liability against assigned counsel. In Allstate Ins. Co. v. LaBrum and Doak, the plaintiff, Allstate Insurance Company, assigned a law firm to defend its insured, Bernadette Kelly, in an underlying action against Kelly and another defendant. Allstate, 1989 WL 51553, at *1 (E.D. Pa. May 12, 1989). When that litigation resulted in a multi-million dollar judgment against Kelly, Allstate sued the law firm for malpractice. Id. The firm sought dismissal on the grounds that the insured, Kelly, was an indispensable party within the meaning of Federal Rule of Civil Procedure 19(b). The court disagreed, holding that, "[s]ince Allstate was a client of LaBrum and Doak, it has its own

5

individual and separate malpractice claim against defendant." Id. (emphasis added). As explained by the court:

> It is clear that "[a]n attorney provided by an insurance company to represent an insured defendant . . . owes to both a duty of good faith and due diligence in the discharge of its duties . . . ." Lieberman v. Employers Ins. of Wausau, 419 A.2d 417, 424 (N.J. 1980) (quoting Lieberman v. Employers Ins. of Wausau, 407 A.2d 1256, 1261 (1979) (N.J. Super. 1979)). These duties arise in the present case because Allstate selected LaBrum and Doak to defend Kelly against the claims stemming from the [underlying] accident.

Id. The court concluded that the insured was not an indispensable party because the insurance company could maintain an action for malpractice against retained counsel on its own.

The United States District Court for the Eastern District of Pennsylvania reaffirmed this position a few years later in Gov't Employees' Ins. Co. v. Forbes, 1999 WL 371625 (E.D. Pa. 1999) ("GEICO"). In GEICO, the plaintiff insurance company sought to assert a malpractice claim against a law firm that it had retained to defend one of its insured. Id. at *1. When the underlying litigation resulted in a multi-million dollar jury verdict against the insured, GEICO filed an action alleging that counsel had mishandled the defense of the underlying case by failing to serve expert interrogatories, introduce expert testimony, seek relevant discovery, or keep GEICO informed about the progression of the case. Id. As in the instant case, the defendants argued that they could not be held liable because they had never formed an attorney/client relationship with GEICO. Id.

Citing Allstate, the district court reiterated that "an insurance company is also a client of the law firm it hires to represent its insured, and so has a separate malpractice claim." Id. (citing

Allstate, 1989 WL 51553, at *1).  The court offered several reasons why it believed that the Supreme Court of Pennsylvania would reach the same conclusion:

> First, while it is true that when there is a conflict between the insured and the insurer, the attorney clearly owes his primary allegiance to the former, there is here no allegation of any such conflict. Second, the current version of the forthcoming Restatement of the Law Governing Lawyers takes the position that regardless of whether the jurisdiction regards the insurer as a co-client with the insured, "a lawyer designated by an insurer to defend an insured owes a duty of care to the insurer with respect to matters as to which the interests of the insurer and the insured are not in conflict." Id. at § 73 cmt. g (Tentative Draft No. 8, 1997). Third, in a case such as this, where the insurer paid an amount in excess of the policy limits and the insured consequently suffered no pecuniary loss, the insured has no incentive incur the expense involved in bringing a malpractice action. The only person who benefits from a rule preventing the insurer from doing so is the malpracticing attorney.

Id. (citing sources omitted).

A handful of other Pennsylvania decisions provide ancillary support for the same proposition.  In Shapiro v. Allstate Ins. Co., 44 F.R.D. 429 (E.D. Pa. 1968), the plaintiff, having received an assignment of rights from an Allstate policy-holder, sought production of various letters exchanged between Allstate and the law firm that Allstate had retained to defend its insured in an underlying action.  Id. at 430.  Allstate objected on the basis of the attorney-client privilege.  Id. at 431.  The court compelled production, explaining that the insured and Allstate were "both" the clients of the attorney:

> It thus seems clear that, in relation to counsel retained to defend the claim, the insurance company and the policy-holder are in privity. Counsel represents both, and, at least in the situation where the policy-holder does not have separate representation, there can be no privilege on the part of the company to require the lawyer to withhold information from his other client, the policy-holder.

Id.

7

In Southeastern Pa. Transit Auth. v. Transit Casualty, Co., 55 F.R.D. 553 (E.D. Pa. 1972) ("SEPTA"), the defendant, Transit, had issued an insurance policy to the Philadelphia Transportation Company ("PTC"), an entity to which SEPTA was a successor in interest. Id. at 554. After an injured individual obtained a verdict against PTC, SEPTA sued the defendant for reimbursement. Id. During the course of discovery, Transit sought production of documents sent by retained counsel to SEPTA during the course of the litigation. Citing Shapiro, the court held that no privilege existed with respect to those documents because "counsel for PTC did represent both PTC (SEPTA) and Transit" in the underlying action. Id. at 557 (citing Shapiro, 44 F.R.D. at 431). See also Truck Ins. Exch. v. St. Paul Fire and Marine Ins. Co., 66 F.R.D. 129, 132-35 (E.D. Pa. 1975) (citing Shapiro and SEPTA for the proposition that attorney-client documents are not privileged as between an insurance company, its insured, and retained counsel, because both the insurance company and the insured are the attorney's clients).

Finally, in Northwood Nursing & Convalescent Home, Inc. v. Cont'l Ins. Co., the insurer, Continental, retained counsel to represent Northwood, its insured, in one of two underlying actions against Northwood. Northwood Nursing, 161 F.R.D. 293 (E.D. Pa. 1995). A discovery dispute eventually arose which implicated issues of attorney-client privilege. Id. at 295-97. The court held that Northwood had no reasonable expectation of privilege against Continental in the case for which Continental had agreed to provide a defense through retained counsel because the parties shared "a common interest, and privity" in that action. Id. at 297. Significantly, the court relied upon the Eastern District's decisions in Shapiro, SEPTA, and Truck Ins. in reaching its conclusion. Id. at 295-96.

8

Despite arising in different contexts, each of the foregoing cases stands for the general proposition that an insurance company and its insured may be considered co-clients of an attorney retained by an insurer to provide a defense for a policy-holder. In Allstate and GEICO, the courts explicitly relied on this principle to allow an insurance company to maintain a malpractice action against counsel retained to defend its insured. Although Defendants cite a host of cases in search of a different result, none are persuasive.

Defendants first cite the decision of the Pennsylvania Supreme Court in Guy v. Liederbach, 459 A.2d 744 (Pa. 1983), for the general proposition that there must be contractual privity in order for a third party beneficiary to sue an attorney for malpractice. Id. at 750. While this is unquestionably true, Guy offers no insight as to whether such privity exists between an insurance carrier and counsel retained for the defense of an insured. Id. at 750-52 (holding that the intended beneficiaries to a will may bring an action against the attorney who drafted the will).

Defendant next cites Eckman v. Erie Ins. Exch., in which the Pennsylvania Superior Court declined to find a co-client relationship between an insurer and an insured in a case where the insured plaintiff sought the right to choose her own counsel, rather than accept the attorney chosen for her by her insurance company. Eckman, 21 A.3d 1203, 1209 (Pa. Super. Ct. 2011). The plaintiff argued that "any attorney selected by" the insurance company would labor under a conflict of interest because of the attorney's inherent obligation to the party paying for its services. Id. The court rejected the allegation of a *per se* conflict of interest, noting that third parties, including "co-client[s]," are frequently tasked with compensating an attorney to defend a third-party client. Id. The court did not consider whether an attorney retained by an insurer *only*

9

represents the insured and not simultaneously the insurer; it simply held that there is no inherent *per se* conflict of interest in such situations.

In Camico Mut. Ins. Co. v. Heffler, Radetich and Saitta, LLP, 2013 WL 315716 (E.D. Pa. Jan. 28, 2013) ("CAMICO"), the plaintiff, an insurance company, sought a declaratory judgment with respect to its coverage obligation in an underlying lawsuit against one of its insured. Id. at *1. CAMICO moved to compel production of various documents exchanged between its insured and independent counsel. Id. at *1. After noting that Pennsylvania law remained unsettled in this area, the court ultimately concluded that, "where an insurer funds the defense of its insured, the insurer *may be, but is not always*, a co-client of the insured." Id. at *11-12 (emphasis added). According to the court, "a wide variety of circumstances" govern this determination, foremost among them "how the parties interact with the joint attorneys and with each other." Id. at *4 (citing In re Teleglobe Commc'ns Corp., 493 F.3d 345, 380 (3d Cir. 2007)). Critically, CAMICO does not support Defendants' argument that an insurer is categorically barred from asserting a malpractice action against assigned counsel; to the contrary, the court explicitly held that an insurer may be a co-client of the insured under appropriate circumstances. Id. at *4.

Finally, Ingersoll-Rand Equip. Corp. v. Transp. Ins. Co., 963 F. Supp. 452 (M.D. Pa. 1997), relied upon heavily by Defendants, dealt with the opposite side of the coin: a policyholder's attempt to hold its insurer vicariously liable for the negligence of an attorney assigned by the insurance company. Id. at 454-55. The court found no support for this type of vicarious liability, noting that, "[w]hen an insurer retains an attorney to represent the insured, pursuant to the insurer's duty to defend, that attorney's client is the insured, not the insurer." Id. at 454. The court cautioned, however, that to allow vicarious liability under the facts of that case would not

10

leave any of the parties without a remedy. See id. at 455 ("[r]efusing to recognize vicarious liability . . . will not leave the insured without any remedy for harm suffered as the result of legal malpractice" because the insured can pursue its own claim against the attorney).

After careful consideration of the foregoing, the Court recommends that Defendants' Motion to Dismiss be denied. Of the many cases cited by the parties in their respective briefs, only two Pennsylvania courts have addressed the precise question presented here: whether an insurance company may maintain a malpractice action against counsel retained for a policy-holder pursuant to a duty to defend. Both of those decisions answered that question in the affirmative. See GEICO, 1999 WL 371625, at *1 (holding that an insurance company is also a client of the law firm it hires to represent its insured, and so has a separate malpractice claim); Allstate, 1989 WL 51553, at *1 ("[s]ince Allstate was a client of LaBrum and Doak, it has its own individual and separate malpractice claim against defendant"). In the absence of any clear authority to the contrary, we find those decisions determinative.

We also note that this outcome is consistent with the policy considerations discussed in Ingersoll-Rand and GEICO. In the former, the court explicitly noted that its decision to reject vicarious liability on behalf of an insured against its insurer would not deprive any of the parties of a remedy because the insured could still pursue an independent claim against the malpracticing attorney. Ingersoll-Rand, 963 F. Supp. at 455 ("[r]efusing to recognize vicarious liability . . . will not leave the insured without any remedy for harm suffered as the result of legal malpractice" because the insured can pursue its own claim against the attorney). The same is not true where the insured suffers no pecuniary loss because the entire brunt of a verdict or settlement is born by the insurance company. In those situations, the insured "has no incentive to incur the expense

11

involved in bringing a malpractice action." GEICO, 1999 WL 371625, at *1. To deny the insurer the opportunity to pursue such a claim would benefit only "the malpracticing attorney." Id.

This holding should not be read to suggest that an insurer may *always* maintain an action for malpractice against counsel retained to defend an insured. As noted in CAMICO, this determination is factually intensive, based upon a number of factors: how the parties interact with the joint attorneys and with each other; the scope of the intended representation; and the parties' general expectations. CAMICO, 2013 WL 315716, at *4 (citing In re Teleglobe, 493 F.3d at 380). These issues can be explored during discovery and revisited, if appropriate, on a fully developed record at the summary judgment stage in this litigation. For present purposes, we conclude only that Pennsylvania law does not present a categorical bar to the type of action asserted by the Plaintiff in the instant case.

### D.      CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss, ECF No. 55, be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

        Respectfully submitted,

        /s/ Maureen P. Kelly
        MAUREEN P. KELLY
        CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: August 28, 2017

cc:    The Honorable David Stewart Cercone
       United States District Judge

       All counsel of record by Notice of Electronic Filing